FILED
2016 Aug-03  AM 09:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| RUTH D. BETTIS, an individual, individually, and on behalf of those similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>SERRA NISSAN / OLDSMOBILE, INC., an Alabama corporation; SERRA VOLKSWAGEN, INC., an Alabama corporation; SERRA AUTOMOTIVE, INC., an Alabama corporation; SERRA AUTOMOTIVE MANAGEMENT, INC., an Alabama corporation; ANTHONY F. SERRA, an individual; ABDUL ISLAM MUGHAL, an individual; and DWIGHT A. PERRY, an individual; )<br><br>Defendants. ) | CV-<br><br><br>**CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

COMES NOW the Plaintiff, **RUTH D. BETTIS**, individually and on behalf of all those similarly situated, and for her Complaint allege and state as follows:

## INTRODUCTION

1.  This lawsuit revolves around the predatory practices of automobile dealerships targeting lower-income borrowers and taking advantage of those without

meaningful access to credit. These consumers thought they were paying for a vehicle, but were unaware they were actually paying to increase the dealerships' profit margins through unlawful markups, unwanted add-ons, and fraudulently inflated sales prices.

## NATURE OF THE CASE & CLASS ALLEGATIONS

2.  This class action is brought under the Racketeer Influenced and Corrupt Organization Act (18 U.S.C. §§ 1961, *et seq.*) ("RICO") on behalf of Plaintiffs and putative class members (collectively "Plaintiffs," "Class," or "Class Members") that were injured by the predatory practices of Defendants Serra Nissan/Oldsmobile, Inc. ("Serra Nissan"), Serra Volkswagen, Inc. ("Serra VW"), Serra Automotive, Inc. ("Serra Automotive") Serra Automotive Management, Inc. ("Serra Management"), Anthony F. Serra ("Tony Serra"), Abdul Islam Mughal ("Mughal"), Dwight A. Perry ("Perry"), (collectively "Defendants"), to fraudulently increase loan approvals, vehicle sales, and maximize profits for themselves.

3.  The criminal indictments and plea agreements related to the fraudulent scheme alleged in this Complaint are well-documented.

4.  The allegations do not arise from the acts of a few "rogue" employees. Plaintiffs were victimized by the same predatory practices charged in the indictments by the concerted actions of a salesman at Serra Volkswagen, Inc., Andy Taylor, and a manager at Serra Nissan, Patrick Donlevy.

2

5.    Defendants' predatory practices permeate their businesses and are founded upon greed and perpetuated by financial incentives.

6.    The predatory practices were encouraged from the top down and were a pattern and practice of the Defendants.

7.    There was a pervasive scheme throughout Defendants' automobile dealerships, which was carried on at Defendants' direction, with their participation, or with their full knowledge, approval, and ratification, that if a prospective customer did not qualify for a vehicle loan, an employee or associate would falsify information and submit fraudulent documents to financial institutions to ensure the customer was funded; fraudulently inflate the value of a vehicle by listing accessories it did not actually include to increase the loan amount; and among other things, "pack" the loan with the cost of add-on products--such as a vehicle service contract, warranty, or gap contract --without the customer's knowledge.

8.    Defendants' predatory practices threaten not only consumer safety but also the nation's financial system.

9.    Defendants intended to and have benefited from the fraudulent scheme by, among other things, increasing the number of cars sold to buyers that otherwise would not have been approved for a loan, inflating the prices of vehicles, and packing loans to incorporate the cost of add-on products without

the buyer's knowledge in order to maximize vehicle sales, profits, and commissions for themselves.

10.   Pursuant to Rules 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following class:

a.   **All individuals in the United States who received an automobile loan processed by Serra Nissan that arose out of the fraudulent scheme to increase sales between 2013 and the present.**

b.   **All individuals whose credit has been adversely impacted as a result of the fraudulent scheme in violation of consumer protection laws between 2013 and the present.**

c.   Excluded from the Class(es) are the following individuals and/or entities:

i.   Any and all federal, state, or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

ii.   Individuals, if any, who timely opt out of this proceeding using the correct protocol for opting out;

iii.   Individual, if any, who have previously settled or compromised claim(s) as identified herein for the Class; and

iv.   Any currently sitting Federal Judge and/or person within the third degree of consanguinity to any Federal Judge.

4

11.   This action should be certified as a class action because:

   a.  Questions of law or fact are common to the Class and affect a large Class of individuals;

   b.  Plaintiff is a member of the Class and her claim is typical of the Class;

   c.  The Class consists of a sufficiently large group of individuals, believed to exceed a thousand members and is so large that it is impractical to join all members of the Class before the Court as individual Plaintiffs. The identity of Class Members is readily ascertainable through Defendants' own documents;

   d.  Named Plaintiff will fairly and adequately represent the claims of the Class, and protect the interests of the Class, without exercising personal interests or otherwise acting in a manner inconsistent with the best interests of the Class;

   e.  Named Plaintiff has retained attorneys experienced in class action litigation who will responsibly and vigorously advocate on behalf of the Class as a whole;

   f.  Common questions of law or fact predominate over those questions affect only individual members of the Class;

   g.  A class action is superior to other methods of adjudication and specifically designed to result in the fair, uniform, and efficient adjudication of the underlying claims. This class action will facilitate

judicial economy and preclude the undue financial, administrative, and procedural burdens that would necessarily result from a multiplicity of individual actions;

h. Without Class certification, the prosecution of separate actions by individual Class Members would be impracticable and financially difficult, and create a risk of repetitive, inconsistent, and varying adjudications. this would have the effect of establishing incompatible standards of conduct, discouraging the prosecution of meritorious but small claims, and/or result in adjudications that would be dispositive of the interests of other Class Members not parties to the adjudication, or otherwise substantially impair the ability of Class Members to protect their rights and interests; and

i. Defendants have acted and/or refused to act on grounds generally applicable to the Class, thereby making the award of damages, equitable relief, and/or restitution appropriate to the Class as a whole.

j. This class action seeks to recover damages stemming from Defendants' fraudulent activities prohibited under RICO; compensation for unjust enrichment, fraud, civil conspiracy, and negligence.

## PARTIES, JURISDICTION, AND VENUE

12. Plaintiff **RUTH D. BETTIS** ("Bettis") is over the age of nineteen (19) and a resident of Jefferson County, Alabama.

13. Defendant **SERRA NISSSAN/OLDSMOBILE, INC.** ("Serra Nissan") is a domestic corporation, organized and existing under the laws of Alabama, with its principal place of business at 1500 Center Point Parkway, Birmingham, Alabama, 35215.

14. Defendant **SERRA VOLKSWAGEN, INC.** ("Serra VW") is a domestic corporation, organized and existing under the laws of Alabama, with its principal place of business at 1500 Center Point Parkway, Birmingham, Alabama, 35215.

15. Defendant **SERRA AUTOMOTIVE, INC.** ("Serra Automotive"), is a domestic corporation, organized and existing under the laws of Alabama, with its principal place of business located at 1501 Center Point Parkway, Birmingham, Alabama 35215.

16. Defendant, **SERRA AUTOMOTIVE MANAGEMENT, INC.** ("Serra Management"), is a domestic corporation, organized and existing under the laws of Alabama, with its principal place of business located at 9709 Parkway East, Birmingham, Alabama 35215.

17. Defendant, **ANTHONY F. SERRA**("Tony Serra"), is over the age of nineteen (19) and a resident of Jefferson County, Alabama, and at all times

relevant to this Complaint was an owner, manager, partner, agent, assign, and/or servant of Serra Nissan/Oldsmobile, Inc., Serra Volkswagen, Inc., Serra Automotive, Inc., and/or Serra Automotive Management, Inc.

18.  Defendant **ABDUL ISLAM MUGHAL** ("Mughal"), is over the age of nineteen years and a resident of Jefferson County, Alabama, and at all times relevant to this Complaint is believed to have been a general sales manager and/or employee of the Serra Defendants.

19.  Defendant **DWIGHT A. PERRY** ("Perry") is over the age of nineteen (19) and a resident of Jefferson County, Alabama, and at all times relevant to this Complaint was an employee/salesperson of Defendant Serra Nissan/Oldsmobile, Inc.

20.  Jurisdiction is conferred on this Court by 18 U.S.C. § 1964(a) and (c) and 28 U.S.C. § 1331, as these matters arise under the laws of the United States of America. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

21.  Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims of Plaintiffs and Class Members occurred here, and is proper pursuant to 18 U.S.C. § 1965(a) because the Defendants transacted their affairs here. Defendants do substantial business

in the State of Alabama, and within this District, are registered to and are doing business within this State, and otherwise maintain requisite minimum contacts with this State and this District. Additionally, Defendants' principal places of business are in this District, and they receive substantial compensation and profits from their business in this District. Defendants are therefore subject to *in personam* jurisdiction in this District, and venue is proper because Defendants reside in this District.

## FACTUAL ALLEGATIONS

22. On or about August 2, 2013, Bettis purchased a 2011 Nissan Maxima from the Defendants.

23. On or about August 2, 2013, Bettis made a cash down payment to Serra Nissan for $8,500.

24. On or about August 3, 2013, Bettis received a receipt for this cash payment.

25. The transaction between Bettis and Serra Nissan has two sets of paperwork. One is for a 2011 Nissan Maxima while the other is for a 2013 Nissan Maxima.

26. Bettis purchased a used 2011 Nissan Maxima for about Eighteen Thousand Dollars ($18,000.00).

27. Perry verbally requested Plaintiff's personal information and Plaintiff provided her personal information, including financial information.

28. On or about August 2, 2013, Perry told Bettis of her approval.

29. Perry told Bettis that she needed a significant down payment.

30. Bettis signed the paperwork on the following day, August 3, 2013.

31. The Defendants did not provide Bettis with a copy of the documents she signed.

32. Because of the large down payment, the Defendants told the Plaintiff that her payments would be substantially reduced after one year of payments.

33. Bettis' payments were not reduced as promised.

34. Bettis received documents in October of 2014 from Serra's financial manager, but these documents do not actually reflect the parties' transactions, contain forgeries, and are a fraud.

35. The paperwork for the 2011 indicates a cash down payment of $1,500.00.

36. Bettis has a receipt for a cash down payment for $8,500.00.

37. The $8,500 payment is not reflected in the paperwork on the 2011 Maxima and the balance does not indicate that the $8,500 down payment was subtracted from the balance due. Instead it reflects a smaller reduction.

38. The documentation for the 2013 car indicates that the car is "New". But the car purchased by Bettis was used with over 40,000 miles.

39. On or about April 22, 2015, a collection attorney, on behalf of Serra VW, attempted to collect certain amounts it claimed were due arising out of the above transaction.

40.   Based upon information and belief, the Defendants submitted the paperwork for the 2013 Nissan Maxima to the financial institutions instead of the paperwork on the actual car purchased.

41.   Santonder Finance approved the financing on a new 2013 Nissan Maxima.

42.   The 2013 paperwork was hidden from Bettis and no copy of her agreement and/or her paperwork were delivered to her.

43.   After demanding the Defendants provide a complete copy of the paperwork, in October 2015, an attorney for Serra finally produced a copy of the paperwork which is when Bettis discovered the fraud, fraudulent paperwork, and misuse of her personal and private information.

44.   Defendants and their co-conspirators, on their own and as part of a common fraudulent scheme and conspiracy, defrauded customers and financial institutions by means of materially false and fraudulent pretenses, representations, promises, or omissions. Defendants implemented and executed the fraudulent scheme through mail fraud (18 U.S.C.§ 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and identity fraud (18 U.S.C. §§ 1028 and 1028A).

45.   The following persons constitute a group of individuals and entities associated in fact and referred to in this Complaint as the "Serra Enterprise":

   a.   Serra Nissan/Oldsmobile, Inc.

   b.   Serra Volkswagen, Inc.

    c.  Serra Automotive, Inc.

    d.  Serra Automotive Management, Inc.

    e.  Anthony F. Serra

    f.  Abdul Islam Mughal

    g.  Dwight A Perry

    h.  Lafayette Taylor (believed to be deceased)

    i.  other unnamed vehicle dealerships

    j.  other unnamed officers, directors, salesmen, general managers, general sales managers, sales managers, finance managers, and/or outside consultants providing services for Serra Nissan/Oldsmobile, Inc., Serra Nissan, and/or other unnamed vehicle dealerships.

46.    The Serra Enterprise is an "enterprise," as defined by 18 U.S.C. §1961(4), engaged in and whose activities affect interstate commerce. The Serra Enterprise engages in and its activities affect interstate and foreign commerce by, among other things, buying and receiving automobiles from multi-national companies that are transported across state lines, receiving funds from lending institutions by interstate wire transmission, and conducting fundamental aspects of its business through the U.S. Mail, interstate commercial carrier, wire, or other interstate electronic media.

47.    Defendants and all other members of the Serra Enterprise are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

48.   Tony Serra is the President of Serra Nissan. He exercises a managerial role in the affairs of Serra Nissan, *inter alia*, and therefore in the affairs of the Serra Enterprise.

49.   Upon information and belief, Defendant Mughal was or is a general sales manager for the Serra Defendants.

50.   Defendant Serra Nissan is engaged in the business of selling and servicing new and used automobiles.

51.   Defendants are associated with the Serra Enterprise and perpetrators of the racketeering activity alleged in this Complaint. Each participated in and controlled the affairs of the enterprise, as the Serra Enterprise's fraudulent scheme could not have been successful without Defendants' direction, participation in, or knowledge, approval, and ratification of the overt acts carried out in the furtherance of the enterprise's fraudulent scheme.

52.   The Serra Enterprise has engaged in non-fraudulent lending as well as the fraudulent lending made the basis of this complaint.

53.   From at least August 2010 until at least August 2, 2014, members of the Serra Enterprise, at the direction of Defendants, with their participation or with their knowledge, approval, and ratification, committed and conspired to commit a series of related fraudulent acts for the common or shared purpose of submitting false information and fraudulent documents to financial institutions to ensure a prospective customer would receive a loan if they did not otherwise

qualify for a loan. The ultimate objective of the fraudulent scheme was to increase the number of vehicles sold by fraudulent means and to inflate the prices of vehicles in order to maximize Defendants' vehicle sales, profits, and commissions.

    a. Dwight A. Perry "worked for Serra Nissan twice during his sixteen years as a car salesman. Most recently, Perry worked as a salesman at Serra Nissan until October 2013 . . . . As a salesman, Perry was responsible for selling cars to customers who came into the dealership and he also contacted customers over the phone to invite them to come to the dealership to purchase a car." Further, Dwight A. Perry was working at Serra Nissan/Oldsmobile, Inc. on or about August 2, 2014, and was one of the salesman who sold Plaintiffs Bettis and Brewster the 2011 Nissan Maxima.

    b. Lafayette Taylor (believed to be deceased) worked as a salesperson at Serra Nissan during the relevant time. As salesperson at Serra Nissan, Taylor was responsible for selling cars to customers who came into the dealership and contacted customers by phone to invite them to come to the dealership to purchase a car. Taylor was one of the salesmen that sold Plaintiffs Bettis and Brewster the 2011 Nissan Maxima.

54.    Defendants sell new and used vehicles and often assist prospective buyers with obtaining car loans.

55. When a prospective buyer needs to obtain a car loan, the dealership collects their personal information, including social security number, credit score, pay stubs, home address, personal references, and other information required by financial institutions in-person or through the U.S. Mail, commercial interstate carrier, wire or other interstate electronic media.

56. Before a financial institution provides financing, the dealership is required to verify a prospective buyer's personal and financial information.

57. A sales manager then enters the prospective buyer's information in a database that submits their information to multiple financial institutions. The financial institutions could then respond with a financing offer, if any, to the customer. A finance manager would provide the prospective buyer with closing paperwork, including the paperwork for the sale itself and the car loan financing.

58. When a loan is financed, the funds from the financial institution are transmitted by wire from the lending institution directly to the dealership, employees, and associates involved in the deal are paid their commission.

59. After the buyer signs the closing paperwork, the dealership is then required to send the funding required documents to the lending institution.

60. The funding required documents should accurately reflect the vehicle sold as well as accurate financial information including credit worthiness, sales price, down payment, among others.

61. The dealership then submits the funding required documents to the lending institution through the U.S. Mail or commercial interstate carrier. Lending institutions will not accept the funding required documents by wire or other interstate electronic media.

62. From at least August of 2010 and continuing until at least August 2, 2014, members of the Serra Enterprise, at the direction of Defendants, with their participation, or with their full knowledge, approval, and ratification, fraudulently increased loan approvals and vehicle sales by creating or altering documents to inflate the income for prospective buyers; submitted fraudulent documents to financial institutions; listed accessories not actually included on a vehicle so a financial institution would increase its loan amount; increased the vehicle sales price without the customer's knowledge; misidentified the model year of the vehicle; presented "straw buyers" who could qualify for a loan to financial institutions when the actual buyer could not qualify; and quoted prospective buyers an inflated monthly payment so Defendants could add a Vehicle Service Contract and/or Gap Contract at the end of the transaction without the buyer's knowledge.

63. The acts and practices used by Defendants and members of the Serra Enterprise in furtherance of the fraudulent scheme include: "Fluffing", "Power Booking", "Drop Deal", "Payment Packing", and "Straw Buyer".

64. As a standard business practice of the Serra Enterprise, Defendants and members of the enterprise would retain control of the closing documents, exposing only the signature line and telling the buyer where to initial or sign. They would not provide the closing documents for buyers to review prior to or during their execution. Buyers were therefore denied any meaningful opportunity to read the closing documents and were prevented from reviewing or understanding the financing terms.

65. Defendants intended to and have benefited from the fraudulent scheme by, among other things, increasing the number of cars sold to buyers that otherwise would not have been approved for a loan, inflating the prices of vehicles, and packing loans to incorporate the cost of add-on products without the buyer's knowledge in order to maximize vehicle sales, profits, and commissions for themselves.

66. Defendants' direction of, participation in, or knowledge, approval, and ratification of the fraudulent scheme is demonstrated by, among other things, the fact that Defendants financially incentivized members of the Serra Enterprise to submit fraudulent paperwork, resulting in increased commissions, and to destroy original financial documents to hide the scheme. The fraudulent scheme entitled the Defendants, and others, to money that they would not have been entitled to absent the fraudulent scheme.

67.   Eight members of the Serra Enterprise were indicted or consented to prosecution by information on charges of conspiracy (18 U.S.C. § 371), bank fraud (18 U.S.C. §§ 1344, 1349 and 2), wire fraud (18 U.S.C. §§ 1343, 1349, and 2), identity theft (18 U.S. C. §§ 1028A and 2), and/or for siding and abetting bank fraud, wire fraud, and/or identity theft in connection with the Serra Enterprise's fraudulent scheme.

68.   Serra Nissan collected personal information from prospective customers, including but not limited to customer's social security numbers, credit scores, monthly income, pay stubs, current home addresses, personal references, and other information required by financial institutions in order to fund car loans.

69.   If a customer sought a car loan, the Serra personnel would enter the customer's information into a different online database that submitted their information to multiple financial institutions simultaneously. The financial institutions could then respond with what financing, if any, they were willing to offer the customer. If a financial institution approved the transaction, the customer would be sent to the financing department to negotiate their loan price. There, they would meet with a finance manager who would provide them with their closing paperwork, including the paperwork for the sale itself and the car loan financing.

70. When a car loan was financed, the funds from the financial institutions were transmitted by wire from the lending institution directly to Serra Nissan. With the profit acquired from the auto loan, the employees involved in the deal (salesperson, finance manager, sales manager, and GSM), and the dealership, were paid their commission.

71. The Serra Enterprise conspired to increase the number of cars sold by fraudulent means; to inflate the prices of vehicles; to falsify vehicle purchasers; and to misrepresent vehicle values, in order to increase profits to themselves.

72. As part of the conspiracy, the conspirators would falsify information or documents for customers that did not qualify for car loans, to ensure their car loans were funded.

73. As part of the conspiracy, the conspirators would falsely and fraudulently inflate the income information of prospective car purchasers submitted to financial institutions so customers who otherwise would not qualify for car loan funding, would show an artificially high income and would be able to obtain a loan, to ensure their car loans were funded.

74. As part of the conspiracy, the conspirators would create false documents or materially alter existing documents, including but not limited to bank statements and pay stubs, to be submitted to financial institutions to show that customers were earning more than their actual income.

75.   As part of the conspiracy, the conspirators would falsely and fraudulently state on a credit application that two individuals lived together when, in fact, they did not, so financial institutions would believe there was a combined income greater than what actually existed for the individual customer.

76.   As part of the conspiracy, the conspirators were financially incentivized to increase the loan amount and to increase commissions for certain employees.

77.   As part of the conspiracy, the conspirators would also defraud financial institutions by making it appear that an individual who qualified for the loan purchased the vehicle, when in fact and truth the actual purchaser would not otherwise qualify.

**COUNT ONE**
**(RICO Violation - 18 U.S.C. § 1962(c))**

78.   Plaintiff adopts and incorporates by reference all prior allegations as if fully set forth herein.

79.   Serra Enterprise, as described in the facts of this Complaint, is an enterprise engaged in and whose activities affect interstate commerce.

80.   The individual Defendants were, at all relevant times, employed by and/or associated with the Serra Enterprise.

81.   As alleged and pursuant to Serra Enterprise's fraudulent scheme, Defendants committed multiple related acts of mail fraud, wire fraud, bank fraud and identity theft and/or fraud.

82.    As alleged and pursuant to Serra Enterprise's fraudulent scheme, Defendants and members of the Serra Enterprise, committed multiple related acts of mail fraud, wire fraud, bank fraud, identity theft and/or fraud, at the direction of Defendants, with their participation or with Defendants' full knowledge, approval, and ratification.

83.    The acts alleged in this Complaint constitute a pattern of racketeering activity under RICO.

84.    As a direct and proximate result of the RICO violations, including the pattern of violations, Plaintiff and Class Members have been injured in their business and/or property as set out above.

### COUNT TWO
### (RICO Violation - 18 U.S.C. § 1962(d))

85.    Plaintiff adopts and incorporates by reference all prior allegations as if fully set forth herein.

86.    As alleged in this Complaint, the Defendants, comprising the Serra Enterprise, agreed and conspired to conduct and participate in the conduct of the affairs of the Serra Enterprise through a pattern of racketeering activity.

87.    Defendants have engaged in the illegal conduct mentioned above as part of a common scheme or conspiracy. This conspiracy could not have been achieved effectively without the willful direction and participation, or knowledge, approval, and ratification of Defendants.

88.    Defendants, with knowledge and intent, conspired and agreed to conduct and participate in the Serra Enterprise through a pattern of racketeering activity. Defendants know that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the fraudulent scheme alleged in this Complaint.

89.    Defendants have, therefore, conspired to violate 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the enterprise through a pattern of racketeering activity in violation of 18. U.S.C. § 1962(d).

90.    Moreover, for the fraudulent scheme to be successful, Defendants and members of the Serra Enterprise had to agree to enact and utilize the same devices and fraudulent tactics against Plaintiffs and Class Members.

91.    As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962 (d), Plaintiff and Class Members have been injured in their business or property in that, among other things, they paid for features not on the vehicle, paid a fraudulently inflated purchase price, were indebted by fraudulent means, and/or paid for additional add/on products that were fraudulently packed into their loans without their knowledge.

## COUNT THREE
### (Aiding and Abetting a Violation of RICO (18 U.S.C. § 2))

92.   Plaintiff adopts and incorporates by reference all prior allegations as if fully set forth herein.

93.   Defendants and members of the enterprise knowingly, and with shared intent, sought to, and have aided and abetted each of the other members of the enterprise in the commission of the predicate acts and pattern of racketeering activity in violation of the RICO count above.

94.   As a result, under 18 U.S.C. § 2, the RICO violations of each member of the enterprise are those of the others as if they had been committed directly by them.

95.   As a direct and proximate result of the fact that Defendants and members of the Serra Enterprise aided and abetted others in violating the sections of RICO described above, Plaintiff and Class Members have been injured in their business and property by the predicate acts which make up Defendants and members of the enterprise's pattern of racketeering activity.

96.   Specifically, Plaintiff and Class Members have been injured in their business or property in that, among other things, they paid for features not on the vehicle, paid a fraudulently inflated purchase price, were indebted by fraudulent means, and/or paid for additional add-on products that were fraudulently packed into their loans without their knowledge. Defendants are therefore liable for the

RICO violations committed by other members of the enterprise as if
Defendants had committed them directly.

## COUNT FOUR
### (Identity Theft)

97.   Plaintiff adopts and incorporates by reference all prior allegations as if fully set
      forth herein.

98.   Alabama's "Consumer Identity Protection Act" (Ala. Code § 13A-8-190 <u>et seq.</u>)
      found in the Alabama Criminal Code, provides for criminal and civil remedy
      where a person's identifying information is used to violate the Act.

99.   Alabama Code § 13A-8-191(2) defines "identifying information" as "[a]ny
      information, used either alone or in conjunction with other information, that
      specifically identifies a person or a person's property," which includes, but is
      not limited to, a person's: name, social security number, financial services
      account numbers, and "[a]ny other numbers or information that can be used to
      access a person's financial resources, obtain identification, act as identification,
      or obtain good or services."

100.  Ala. Code § 13A-8-191(3) defines a "victim" as any "person whose
      identification documents or identifying information are used to" violate the
      Act.

101.  Ala. Code § 13A-8-192 provides, in part, that a person violates the Act if,
      without the authorization, consent, or permission of the victim, and with the

intent to defraud for his or her own benefit or the benefit of a third person, he or she does any of the following:

a)   Obtains, records, or accesses identifying information that would assist in accessing financial resources, obtaining identification documents, or obtaining benefits of the victim.

b)   Obtains good or services through the use of identifying information of the victim.

c)   Obtains identification documents in the victim's name.

102.   Alabama Code § 13A-8-199 provides a civil remedy for violations of Section 13A-8-192, in addition to other remedies provided by law, under which the "victim" may recover the greater of Five Thousand Dollars ($5,000.00) or three (3) times actual damages for each incident, plus attorney's fees, expenses, and court costs.

103.   Plaintiff and Class Members are "victims" as defined under the Consumer Identity Protection Act.

104.   Defendants and/or members of Serra Enterprise used Plaintiff' and Class Members' identifying information in such a way as to have violated Section 123A-8-192 of the Act.

105.   Defendants and/or members of Serra Enterprise used Plaintiff's and Class Members' identifying information without permission, with intent, for their

own profit, for the purpose of defrauding the Plaintiff and Class Members, all in such a way as to have violated Section 13A-8-192 of the Act.

106. Defendants and/or members of Serra Enterprise are liable to Plaintiff and Class Members under the Consumer Identity Protection Act for all remedies available under the Act.

## COUNT FIVE
### (Unjust Enrichment)

107. Plaintiff adopts and incorporates by reference all prior allegations as if fully set forth herein.

108. Defendants and members of Serra Enterprise have received a benefit at the expense of Plaintiff and Class Members by providing loans to customers with credit problems and/or insufficient income for which they would not have been approved without the Defendants fraudulent scheme.

109. Defendants intended to and have benefited from the fraudulent scheme by, among other things, selling vehicles to buyers that otherwise would not have been approved for such vehicles, increasing profits from fraudulently inflated sales prices, and receiving additional profits by packing loans to incorporate the cost of additional products - such as a vehicle service contract, warranty, or gap contract - all without buyer's knowledge.

110. It is unjust and inequitable to permit Defendants to retain the benefits they have obtained through their scheme to defraud by means of false pretenses,

representations or promises. The financial benefits obtained by Defendants should not, in fairness, be retained by them but rather should be paid and returned to Plaintiff and Class Members.

111. As a direct and proximate result of the inequitable conduct by Defendants and members of the Serra Enterprise, Plaintiff and Class Members suffered pecuniary loss, incidental and consequential damages, as well as severe mental anguish and emotional distress.

## COUNT SIX
### (Fraudulent Concealment)

112. Plaintiff adopts and incorporates by reference all prior allegations as if fully set forth herein.

113. When purchasing an automobile, buyers such as Plaintiff and Class Members trusted Defendants and members of Serra Enterprise to provide truthful information during the financing process and to honestly handle their vehicle financing.

114. As a routine practice of Defendants and Serra Enterprise members at the direction of Defendants with their participation, or with their full knowledge, approval, and ratification, would tell the buyer what the monthly payment on the automobile would be without providing any other meaningful financial disclosure(s); if the buyer appeared hesitant, Defendants and members of Serra Enterprise would falsely tell the purchaser they could refinance the automobile,

and lower the monthly payment, after making payments for a short period of time.

115.   As a routine practice Defendants and members of Serra Enterprise would retain control of each sheet of paper when a buyer was signing the closing documents, exposing only the signature lines and telling the buyer only where to sign or initial -- initial here, initial there; sign here, sign there. Additionally, Defendants and members of Serra Enterprise would not provide the closing documents for buyers to review prior to or during their execution. Buyers were therefore denied any meaningful opportunity to read the closing documents and prevented from reviewing or understanding what they were actually financing and prevented from understanding the total amount they will have paid after making all scheduled payments.

116.   In the process of arranging financing and executing closing documents, Plaintiff and Class Members were harmed when Defendants and member of Serra Enterprise fraudulently obtained the loan, inflated the loan amount, quoted an inflated monthly payment, and/or "packed" the loan with the cost of add-on products - such as vehicle service contract, warranty, or gap contract.

117.   Defendants and members of Serra Enterprise have a duty to disclose these facts to Plaintiff and Class Members. All members of the enterprise are automobile dealers or employees of dealers and engage in loan financing on a regular basis in the course of their business. There is an inherent disparity of

knowledge between the customer and Defendants and members of the enterprise.

118. The facts withheld by Defendants were material to Plaintiff and Class Members. Reasonable consumers, including Plaintiff and Class Members, would not have executed the closing documents had they known that Defendants had withheld these facts.

119. Defendants withheld these material facts to induce Plaintiff and Class Members to execute their closing documents, and they did execute these documents without knowledge of these material facts.

120. As a direct and proximate result of the fraudulent concealment by Defendants, Plaintiff and Class Members purchased vehicles from Defendants and suffered pecuniary loss, incidental and consequential damages, as well as severe mental anguish and emotional distress.

## COUNT SEVEN
### (Negligence, Wantonness, and/or Reckless Conduct)

121. Plaintiff adopts and incorporates by reference all prior allegations as if fully set forth herein.

122. Defendants owed Plaintiff and Class Members a duty not to be wanton, negligent, and/or reckless in their conduct toward Plaintiff and Class Members, including but not limited to the following conduct: (1) creating false documents and/or materially altering documents; (2) obtaining financing-related

documents by fraudulent means: (3) charging and financing an inaccurate and fraudulently inflated loan amount and sales price; (4) quoting a fraudulently inflated monthly payment; (5) "packing" transactions with the cost of add-on products, such as a vehicle service contract, warranty, or gap contract; (6) making material misrepresentations and communications to third parties regarding Plaintiff's and Class Members' financial abilities and identifying information, knowing that Plaintiff and Class Members would be harmed by third parties' reliance on such misrepresentations; and/or (7) engaging in other conduct inconsistent with Defendants' obligations and duties under the contract, federal and state law.

123. Defendants breached their duty. Defendants were willful, wanton, negligent, and/or reckle3ss in their use of Plaintiff's and Class Members' personal and identifying information, including the theft and misuse of Plaintiff's and Class Members' identity, intentionally and knowingly false, misleading and deceptive information regarding Plaintiff and Class Members to facilitate the lease/sale of a vehicle to them and to facilitate the lease/sale of the falsified financing contracts to third parties to maximize profits for Defendants and Serra Enterprise.

124. Defendants were negligent, wanton, and/or reckless in their conduct regarding Plaintiff and Class Members in that Defendants caused damages to Plaintiff and Class Members. Defendants also know or should have know that Plaintiff

and Class Members would foreseeably suffer injury as a result Defendants' negligent, wanton, and/or reckless conduct and actions alleged herein.

125.   As a direct and proximate result of the negligent, wanton, and/or reckless conduct and actions of Defendants, Plaintiff and Class Members suffered pecuniary loss, incidental and consequential damages, as well as severe mental anguish and emotional distress.

## COUNT EIGHT
### (Negligent Training, Supervision, and/or Retention)

126.   Plaintiff adopts and incorporates by reference all prior allegations as if fully set forth herein.

127.   Defendants owed Plaintiff and Class Members a duty of care and professionalism in the rendition of the services rendered and products sold to Plaintiff and Class Members; in training and supervising Defendants and Serra Enterprise and/or their agents, assigns, servants, managers, and/or employees to perform those services in full compliance with the laws of the State of Alabama and the Federal Government; in not engaging or allowing Defendants and Serra Enterprise and/or their agents, assigns, servants, managers, and/or employees to engage in the wrongful practices herein alleged; in not suppressing or concealing such activities or enabling Defendants and Serra Enterprise and/or their agents, assigns, servants, managers, and/or employees to do so, and in not terminating or otherwise disciplining those known to have

violated company policies and state and/or federal laws and/or regulations by engaging in the misconduct herein alleged.

128.   Defendants owed duties to Plaintiff and Class Members in putting forth loyal, honest, and fair dealing agents, assigns, servants, managers, and/or employees who act in compliance with Federal and State laws regarding the sale, titling, and financing of vehicles, as well as the proper methods utilized for credit inquiry and Defendants' superior knowledge of those respective industries, its practices, and Defendants' practices, policies and/or procedures. Defendants' negligent retention of agents, assigns, servants, managers, and/or employees known to have engaged in the misconduct described herein acted as ratification of such misconduct and resulted in the aiding and abetting of unlawful conduct.

129.   The Defendants, collectively, separately, or as agents, breached the duties owed to Plaintiff and Class Members, and such breaches arise out of the negligent or wanton conduct of the Defendants and those who acted in concert or conspiracy with Defendants or acted as their agents, assigns, servants, managers, and/or employees, and in the line and scope of their business, contractual, and/or statutory and/or regulatory duties, in order to preserve and protect the financial interest of the Defendants and those who acted in concert or conspiracy with them.

130.   Defendants and Serra Enterprise knew or should have know of the wrongful, fraudulent practices engaged in by their agents, assigns, servants, managers, and/or employees, and knew or should have known that their own training, supervision, and/or retention practices were inadequate to fulfill their obligations to protect the public, Plaintiff, and Class Members.

131.   Defendants and Serra Enterprise knew or should have known that their policies, practices, and/or procedures in training, supervising, and retaining such agents, assigns, servants, managers, and/or employees were inadequate to prevent or detect the misconduct described herein, and such inadequate policies, procedures, and/or practices were the actual and proximate cause of Plaintiff's and Class Members' injuries.

132.   Plaintiff and Class Members have incurred damages proximately caused by Defendants' negligence in training, supervising, and retaining their agents, assigns, servants, managers, and/or employees.

133.   As a result, Defendants' conduct breached said duties to Plaintiff and Class Members and were wanton, negligent and/or reckless.

134.   As a proximate result of the aforementioned conduct and actions of Defendants, Plaintiff and Class Members suffered pecuniary loss as described above in an amount to be proven at trial, incidental and consequential damages, as well as severe mental anguish and emotional distress.

## COUNT NINE
### (Civil Conspiracy)

135.  Plaintiff adopts and incorporates by reference all prior allegations as if fully set forth herein.

136.  Defendants willfully, knowingly, and intentionally agreed and conspired with each other for the purpose of engaging in unlawful conduct, for unlawful purposes, including without limitation acts of fraud as alleged in this Complaint, the furtherance of their schemes, and for the purpose of engaging in otherwise lawful conduct by wrongful conduct and means.

137.  Defendants and Serra Enterprise committed the acts alleged pursuant to, and in furtherance of, that agreement and furthered the conspiracy by cooperating, encouraging, ratifying, and/or adopting the acts of others.

138.  As a direct and proximate result of the acts in furtherance of the conspiracy, Plaintiff and Class Members have suffered injury, damage, loss, and harm as described above. The wrongful conduct committed pursuant to the conspiracy was a substantial factor in causing harm to Plaintiff and Class Members.

139.  The intentional agreements to commit, and the commission of, these wrongful acts by Defendants and Serra Enterprise were willful, malicious, oppressive, and in wanton and conscious disregard of Plaintiff's and Class Members' rights.

140. Plaintiff and Class Members are entitled to an award of punitive damages to punish Defendants and Serra Enterprise's wrongful conduct and actions and to deter future wrongful conduct and actions.

141. As a result, Plaintiff and Class Member have been damaged as described above in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff and Class Members respectfully request this Honorable Court to enter Judgment against Defendants and award relief as follows:

A.   Compensatory damages, in amounts to be determined, which shall include loss of monies, incidental and consequential damages, severe mental anguish and emotional distress;

B.   Three (3) times the amount of Plaintiff's and the Class Members' compensatory damages, in amounts to be determined, costs of the suit, expenses of litigation, and reasonable attorneys' fees as provided by 18 U.S.C. § 1964(c);

C.   Damages under the Alabama Consumer Identity Protection Act, in an amount this Court and Jury deems appropriate to compensate Plaintiff and Class Members for three (3) times their actual damages, or Five Thousand Dollars ($5,000), whichever is greater, as well as attorneys' fees and costs;

D.     Punitive damages to punish Defendants and Serra Enterprise's wrongful conduct and actions and to deter future wrongful conduct and actions, to be determined by the Jury;

E.     Such other and further relief, supplemental, alternative, different, and/or additional damages, pre- and post-judgment interest, costs, fees, or equitable relief as this Court and Jury deem proper.

## DEMAND FOR JURY TRIAL

### PLAINTIFF DEMAND TRIAL BY STRUCK JURY ON ALL CLAIMS RAISED HEREIN, INCLUDING CLASS CLAIMS

**DATED: August 2, 2016.**

Jason L. Yearout (ASB-4487-T80J)
Attorney for Plaintiff
YEAROUT & TRAYLOR, PC
3300 Cahaba Road, Suite 300
Birmingham, Alabama 35223
t. 205.414.8169 (dir)
f. 205.795.7169 (dir)
e. jyearout@yearout.net
www.yearout.net

**PLAINTIFFS WILL MOVE FOR SERVICE OF DEFENDANTS BY U.S. CERTIFIED MAIL**